IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION


**DAVID R. YURUS,**

    **Plaintiff,**

vs.                                    Case No. 4:01cv17-MCR/WCS

**VARIABLE ANNUITY LIFE
INSURANCE COMPANY, et al.,**

    **Defendants.**

_____/


## REPORT AND RECOMMENDATION

The remaining issues as to the amount of fees and costs to be awarded has been referred to me by District Judge Rodgers. Docs. 1031 and 1041. Defendants BenefitsCorp and T. Rowe Price have filed documents pursuant to F<small>LA</small>. N. D. L<small>OC</small>. R. § 54.1(E)(1) – (3). Docs. 1063-1064 (BenefitsCorp) and 1065-1066 (T. Rowe Price). Plaintiff and counsel have responded. See F<small>LA</small>. N. D. L<small>OC</small>. R. § 54.1(E)(4)(a) – (c). Doc. 1075. Defendants filed a reply as contemplated by F<small>LA</small>. N. D. L<small>OC</small>. R. § 54.1(E)(5). There were earlier filings, but those should be disregarded. See doc. 1062.

At issue are fees and expenses described in the following motions:

1. BenefitsCorp's motion for attorney's fees pursuant to 42 U.S.C. § 1988,

doc. 934, as to Plaintiff David Yurus for all fees incurred in defense of the action. BenefitsCorp seeks $384,041.43 in fees.  Doc. 1064, ¶ 8.

     2.  BenefitsCorp's motion for Rule 11 sanctions as to Plaintiff David Yurus and his attorney, Steven R. Andrews, with respect to BenefitsCorp's expenses, including attorney's fees, in defending against Plaintiff's motion for partial summary judgment, doc. 737.  BenefitsCorp seeks $23,924.40 in fees and expenses.  Doc. 1064, ¶ 15.

     3.  T. Rowe Price's motion for attorney's fees pursuant to 42 U.S.C. § 1988, doc. 937, as to Plaintiff David Yurus for all fees and expenses in defense of this suit.  T. Rowe Price seeks fees in the amount of $429,941.50.  Doc. 1066, ¶¶ 41 and 42.[1]  Costs were taxed by the Clerk in the amount of $40,166.14, on August 4, 2005.  Docs. 1022 and 1023 (amended).  T. Rowe Price claims that an additional $52,798.88 as costs (not taxable) is due as to David Yurus.  Doc. 1066, ¶ 48.

     4.  T. Rowe Price's motion for attorney's fees pursuant to 42 U.S.C. § 1988, doc. 937, as to Plaintiff Samantha Yurus for all expenses incurred in defense of her claim of loss of consortium.  T. Rowe Price seeks $2,677.17 as fees.  Doc. 1066, ¶ 53.

     5.  T. Rowe Price's motion for fees and costs pursuant to FED. R. CIV. P. 11, doc. 937, as to Plaintiff David Yurus and his attorney, Steven R. Andrews, with respect to T. Rowe Price's expenses, including attorney's fees, in defending against Plaintiff's motion for partial summary judgment, doc. 737.  T. Rowe Price seeks $27,487.15 as fees and $6,626.69 as costs and expenses against Plaintiff David Yurus and his attorney, Steven R. Andrews.  Doc. 1066, ¶ 60.

---

[1] This includes fees for the appeal.  In the Eleventh Circuit, T. Rowe Price is seeking $31,009.50 as fees for the appeal.  If the Eleventh Circuit grants this award, the fee request in this court should be reduced by that amount.  *Id.*, ¶ 42.

**Plaintiff David R. Yurus and attorney's fees pursuant to 42 U.S.C. § 1988**

Plaintiff David Yurus argues that compliance with Fla. N. D. Loc. R. § 54.1(E)(4)(a) – (c) would be unproductive because "[n]o amount of hour or rate analysis can reduce the amounts charged to within even haling range of Mr. Yurus' ability to pay." Doc. 1075, p. 2. It is argued that Plaintiff cannot pay a fee of $8,000, much less the amount sought by Defendants, a total of $866,781.81 (including fees, costs, and expenses). Id.

Plaintiff was supposed to have accepted or rejected the fee amount sought, and if rejected, make a counter-offer and comply with the other portions of the local rule.[2] Plaintiff did not. In light of the argument as to indigency, however, Plaintiff's failure to make an explicit counter-offer cannot be read as acceptance of the total fee requested. Plaintiff's implicit counter-offer is that he pay nothing.

Except with respect to Rule 11 sanctions, Plaintiff and counsel have not objected to either the hourly rates sought or the hours claimed, and the objections there, discussed ahead, are not persuasive. The court, therefore, should determine that the number of hours claimed and hourly rates are reasonable.

Plaintiff contends that he lacks the ability to pay any fees. Ability to pay is a factor that must be considered in determining the amount of a fee award pursuant to 42 U.S.C. § 1988. "The law in this circuit is clear that ability to pay should be considered in the award of attorney's fees under § 1988." Baker v. Alderman, 158 F.3d 516, 528

---

[2] The rule requires that if the opposing party does not accept the amount claimed, that party shall identify the hours objected to and state why, submit an affidavit as to the hourly rate that the opposing party contends is reasonable, and propose an amount of fees that the opposing party would be willing to pay.

(11th Cir. 1998) (*dicta*, a case involving Rule 11 sanctions). Ability to pay is not the sole determinative factor, however:

> Unhampered by our precedents, we hold that a district court awarding attorney's fees to a prevailing Title VII defendant should consider not only the applicable *Johnson*[3] guidelines, but also, as a limiting factor, the plaintiff's financial resources. As the Second Circuit has noted, equitable considerations appropriately guide the determination of fee awards authorized by federal statute, and the financial resources of the paying party are one such consideration. *Faraci v. Hickey-Freeman Co.*, 607 F.2d 1025, 1028 (2d Cir. 1979). We agree with *Faraci* that in determining the size of the award, *the district court should ascertain whether, in light of the plaintiff's ability to pay, a reduced assessment would fulfill the deterrent purpose of s 706(k) without subjecting the plaintiff to financial ruin*. *Id.* at 1029.
>
> At the same time, we hold that *in no case may the district court refuse altogether to award attorney's fees to a prevailing Title VII defendant because of the plaintiff's financial condition. A fee must be assessed which will serve the deterrent purpose of the statute, and no fee will provide no deterrence*. In this case, the district court erred by finding Durrett's apparent indigency justification for assessing no fee. On remand, Durrett's indigency, if established, will limit, but not eliminate, the award.

Durrett v. Jenkins Brickyard, Inc., 678 F.2d 911, 917 (11th Cir. 1982) (emphasis added).

Likewise, "a district court must consider financial ability in the award of [Rule 11] sanctions." Baker v. Alderman, 158 F.3d at 529. These principles were further explained in Martin v. Automobili Lamborghini Exclusive, Inc., 307 F.3d 1332 (11th Cir. 2002), which held that a Rule 11 sanction clearly beyond a person's current or future ability to pay is inappropriate:

> We conclude that, when exercising its discretion to sanction under its inherent power, a court must take into consideration the financial circumstances of the party being sanctioned. *Cf. Baker v. Alderman*, 158 F.3d 516, 528-29 (11th Cir.1998) (imposing sanctions under Civil Rights

---

[3]Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974).

Case No. 4:01cv17-MCR/WCS

> Act and Rule 11); *see also Byrne*,[4] 261 F.3d at 1098-99 n. 53 (concluding that the district court's consideration of parties' ability to pay sanctions imposed under Rule 11, 28 U.S.C. § 1927, and the court's inherent power was in accord with *Baker* ). The inherent power to impose sanctions allows courts to vindicate their judicial authority, but such power must be used to fashion "an appropriate sanction." *Chambers*,[5] 501 U.S. at 44-45, 111 S.Ct. at 2132- 33.
>
> Sanction orders must not involve amounts that are so large that they seem to fly in the face of common sense, given the financial circumstances of the party being sanctioned. What cannot be done must not be ordered to be done. *Miccosukee Tribe v. South Florida Water Management District*, 280 F.3d 1364, 1370 (11th Cir.2002)(discussing injunctions). And, sanctions must never be hollow gestures; their bite must be real. *For the bite to be real, it has to be a sum that the person might actually pay. A sanction which a party clearly cannot pay does not vindicate the court's authority because it neither punishes nor deters. Cf. Malautea*,[6] 987 F.2d at 1545 (concluding that sanctions imposed under court's inherent power "justly punished" the offending parties and would hopefully deter others from engaging in similar conduct).

307 F.3d at 1337 (emphasis added).

An example of a sanction that served these interests, but took into account the ability of the party to pay, is found in DiPaolo v. Moran, 407 F.3d 140 (3rd Cir. 2005). There, the court found that it was not an abuse of discretion to sanction an attorney by ordering him to attend 12 hours of continuing legal education and reprimanding him, instead of awarding over $30,000 in attorney's fees, since he was a solo practitioner, practiced out of his home, and had few assets with which to pay such an award.

It has been held in the Tenth Circuit that ability to pay should be treated as an affirmative defense. Dodd Ins. Services, Inc. v. Royal Ins. Co. of America, 935 F.2d

---

[4] Byrne v. Nezhat, 261 F.3d 1075, 1121 (11th Cir.2001).

[5] Chambers v. NASCO, Inc., 501 U.S. 32, 44, 111 S.Ct. 2123, 2132, 115 L.Ed.2d 27 (1991).

[6] Malautea v. Suzuki Motor Co., Ltd., 987 F.2d 1536, 1545 (11th Cir.1993).

1152, 1160 (10th Cir. 1991). It is likely that the Eleventh Circuit would agree. In a case involving an award of costs, the Eleventh Circuit cautioned: "If a district court in determining the amount of costs to award chooses to consider the non-prevailing party's financial status, it should require substantial documentation of a true inability to pay." Chapman v. AI Transport, 229 F.3d 1012, 1039 (11th Cir. 2000) (clarifying that ability to pay is a permissive factor to consider when awarding costs).

Plaintiff has filed his own affidavit. Doc. 1075, exhibit 1. He avers that he was last employed six years ago as an analyst for the State of Florida, and has not been employed since. Id., ¶¶ 2, 5. He states that he has "not been able to obtain employment." Id., ¶ 5. Plaintiff concludes that he has no bank, savings, or securities account, does not own a car, does not have the means to lease a car, and does not have any cash, securities, a credit line, or access to any funds. Id., ¶ 6. Defendants have shown that at the time of his deposition several years ago, Plaintiff was enrolled in law school, had engaged in "day trading" of securities, and received $200,000 in settlement of his claims against State of Florida Defendants. Doc. 1077, pp. 8-9.

Plaintiff's affidavit falls far short of showing inability to pay any fee judgment. Plaintiff has not credibly described the efforts he has made to find a job. He has not established his job skills, age, health, or any other factor that might make him unemployable. Plaintiff is presumably not receiving social security disability benefits and therefore could work in some sort of job. That Plaintiff was enrolled in law school indicates that he could be employed in a relatively high paying job.

Nor has Plaintiff comprehensively described his financial condition. Plaintiff has not set forth the details of his monthly expenses and other debts, or how he supports

himself.  The affidavit, on its face, avows no ownership of any property that might be used to pay a fee judgment, but it also fails to account for the $200,000 settlement received from State of Florida Defendants.

Local Rule 54.1(F) provides that factual disputes may be referred to a special master.  The district judge's referral of these issues to me is sufficient for me to schedule an evidentiary hearing as to Plaintiff's ability to pay.  I am reluctant to set an evidentiary hearing, however, in the absence of a request for an evidentiary hearing from one of the parties.  It seems doubtful that Plaintiff could pay a judgment of $866,781.81, and it may be that the parties do not want an evidentiary hearing to fine-time the judgment amount.  This suit has already been exceedingly costly, and it may be that neither side wants the expense of an evidentiary hearing to fine-tune what may be an uncollectible judgment.  If I am mistaken, either side may request an evidentiary hearing.  Even if a hearing is held, it is doubtful that I will permit discovery.  A subpoena duces tecum directed to Plaintiff, to bring all of his financial records to a hearing, and his testimony should suffice.[7]

In the absence of a request for an evidentiary hearing, I have arrived at a recommended fee based upon the scant evidence before me.  Plaintiff has not shown a complete inability to work and to make payments within his means.  Were he to obtain a law degree and admission to the bar, he might be able to earn at least $50,000 per year.  Plaintiff's age is unknown and thus the length of a possible law career is unknown, but it may be assumed that he would not have enrolled in law school if he did

---

[7] See Notes to 1993 Amendments to FED. R. CIV. P. 54: "On *rare* occasion, the court may determine that discovery under Rules 26-37 would be useful to the parties." (Emphasis added.)

not have a substantial number of years remaining to work.  It will be assumed that Plaintiff can work for another 20 years and could find a job enabling him to pay $1,000 per month for a period of 20 years.  Assuming that Plaintiff could secure a loan for $120,000 at 8% interest, the monthly payment would be about $1,000.[8]  This would provide $60,000 for each Defendant.

I am troubled that there has been no accounting for the $200,000 settlement.  Some of the money may have gone to Steven Andrews as payment of Plaintiff's attorney's fees.  The rest probably has been dissipated as living expenses, since Plaintiff has not worked for six years.  But the factual basis for these conclusions does not exist.  I also do not have before me sufficient legal argument by BenefitsCorp or T. Rowe Price for the proposition that the court has authority to order Mr. Andrews to return his portion the money (if any) to Plaintiff so that he can pay a fee judgment.  Thus, despite my misgivings, I have not recommended that any of the settlement money be taken into consideration in setting the appropriate fee.

T. Rowe Price has been awarded costs in the amount of $40,166.14.  The total award for fees, costs, and expenses should be limited to $60,000.  Therefore, it is recommended that the court award to T. Rowe Price an additional $19,833.86 to bring the total award to $60,000.

**Plaintiff Samantha Yurus and attorney's fees pursuant to 42 U.S.C. § 1988**

T. Rowe Price makes a claim against former Plaintiff Samantha Yurus for attorney's fees of $2,677.17.  BenefitsCorp makes no claim against Samantha Yurus.

---

[8] This monthly payment on a loan of $120,000 at 8% interest for 20 years is about $1,003 per month.  See http://www.interestratecalculator.com/mortgage/mortgage.html.

Samantha Yurus has objected to the sufficiency of the documentation to support a fee award, objecting to six separate entries. Doc. 1075, pp. 4-5. Plaintiff refers to exhibit D of document 1066, arguing that the exhibit fails to describe the work attributable to defense of claims by Samantha Yurus. Doc. 1075, pp. 4-5.

Exhibit D, standing alone, does not support this claim for fees. T. Rowe Price responds by referring to entries on exhibit C attached to document 1066. Doc. 1078, p. 7. Exhibit C, standing alone, is not sufficient to support this claim either.[9] Nor does document 1066, filed by April Boyer, sufficiently explain how the fee claim was calculated for work related to the claim of Samantha Yurus. Doc. 1066, pp. 13-14.

However, in response to Plaintiff's objections, T. Rowe Price has further explained the method used to isolate the work attributable to the claim of Samantha Yurus. Doc. 1078. On behalf of T. Rowe Price, April Boyer explains that she first estimated the time attributable to work on the motion to dismiss the Second Amended Complaint from a larger number of hours billed that day. In other words, Ms. Boyer has claimed only a fraction of the total number of hours of work billed that day since work on the motion to dismiss was for only part of that work day. A further reduction then occurs. The motion to dismiss had three claims to address, and the consortium claim was one of the three. Thus, Ms. Boyer has claimed one-third of the smaller number of hours.

For example, T. Rowe Price refers to an April 26, 2002, entry for April Boyer for 1.0 hour, and then claims one-third of that as a fee attributable to work on the

---

[9] T. Rowe Price also refers to exhibit C as the "full, unredacted invoice" for the attorney's fees. Doc. 1078, p. 7. It is not. Portions of this invoice were redacted during the copying process.

consortium claim.  While the April 26, 2002, entry for April Boyer is actually for 3.60 hours, Ms. Boyer has claimed only 1.0 hour of the total 3.60 hours for work on the motion to dismiss, and then has isolated one-third of one hour, that is, $65 for work on the consortium claim that day.  This is reasonable.

The next entry identified by T. Rowe Price is a May 2, 2002, for April Boyer for 0.3 hours, and a claim for one-third of that, $19.50.  In exhibit C, there is a total claim for April Boyer on May 2, 2002, for 2.80 hours.  Within that 2.80 hours there was a conference with E. Myers concerning witnesses for the consortium claim to aid in preparation of Defendant's Rule 26(a)(1) report.  The claim of 0.1 hours, or $19.50, for this work is more than reasonable.

The next entry is a claim on May 8, 2002, by April Boyer for one-third of one hour, again, for $65.  Exhibit C contains a total of 3.10 hours claimed, and within that, describes research to determine the viability of the consortium claim.  A charge of $65 is reasonable for this work.

The claim for the work of Patricia Montes de Oca on May 10, 2002, in the amount of $490.00, is substantiated by exhibits D and C.  The claim is reasonable and should be allowed.

The claim for the work of April Boyer on May 17, 2002, for one third of 0.5 hours, $32.50, is substantiated by exhibit C.  She reviewed the research of P. Montes de Oca.  The claim is reasonable.

The claim for the work of April Boyer for work on May 22, 2002, for $97.50 (one third of 1.5 hours) is again based upon exhibit C.  That exhibit describes 3.40 hours of work that day, some of which related to research for the motion to dismiss.  The charge

is reasonable. The claims of April Boyer for work on May 24, 2002, one-third of 0.8 hours ($52.00), May 27, 2002, one-third of 2.5 hours ($162.50), May 29, 2002, one-third of 6.8 hours, are likewise reasonable. These charges are attributable to the motion to dismiss by the method described above. The charge of 1.0 hour ($195) for research as to the consortium claim on May 28, 2002, is reasonable.

T. Rowe Price also explains how the estimates of the number of hours for Daniel Casey, and the remaining hours for April Boyer and Patricia Montes de Oca, were calculated. Doc. 1078, pp. 7-8. The method, to estimate the amount of time spent on the motion to dismiss from the larger total set forth in the invoice and then divide by three, is reasonable.

In summary, $2,677.17 is a reasonable attorney's fee for work in defense of the consortium claim. That amount should be awarded against Samantha Yurus.

**Rule 11 sanctions against David Yurus and Steven R. Andrews**

**Joint and several liability, and efforts to mitigate**

Equity has a part in determining the amount of sanctions to be awarded; "[i]n allocating sanctions, the court must 'ascertain the extent to which responsibility for the violation rests with client or counsel and to apportion fees appropriately between the two of them.' " PaineWebber, Inc. v. Can Am Financial Group, Ltd., 121 F.R.D. 324, 335 (N.D. Ill. 1988), aff'd, 885 F.2d 873 (7th Cir. 1989) (Table). Likewise, as the court said in Martin v. Automobili Lamborghini, "[a] sanction which a party clearly cannot pay does not vindicate the court's authority because it neither punishes nor deters."

As to BenefitsCorp, Steven Andrews notes that his client, David Yurus, refused to sign a settlement release with BenefitsCorp in exchange for a settlement for $8,000.

Andrews, on behalf of Yurus, also tried to settle with T. Rowe Price, as he did with the other Providers, but a settlement offer a year earlier had been rejected and apparently T. Rowe Price did not want to settle after that. Andrews argues that his own liability, therefore, should not exceed $8,000.

If David Yurus was unreasonable in his refusal to sign the release needed to effect a settlement with BenefitsCorp, Mr. Andrews might have moved to withdraw as counsel for Yurus and entered into his own settlement with BenefitsCorp, given the potential of his own personal Rule 11 liability. Instead, the appeal went forward, adding unnecessary costs. The sanctionable conduct and the harm to BenefitsCorp was the filing of Plaintiff's motion for summary judgment, an event that preceded BenefitsCorp's offer to settle. The harm to BenefitsCorp was not mitigated by Mr. Andrews's efforts to persuade David Yurus to settle after the damage to BenefitsCorp was done.

The § 1988 fees and costs already awarded probably would exhaust the ability of David Yurus to pay anything other than a nominal Rule 11 penalty. Further, counsel Steven Andrews is the more culpable here as to Plaintiff's motion for summary judgment. Judge Vinson laid out the law applicable to the claim, but counsel did not apply the law. Defendants' motions for summary judgment set forth the lack of evidence to support Plaintiff's claims (especially the transcript of the February 17, 2000, meeting, which provided no evidence of a conspiracy with either T. Rowe Price or BenefitsCorp), but counsel ignored the evidence. For these reasons, Rule 11 sanctions in favor of both T. Rowe Price and BenefitsCorp should be awarded primarily as to Steven R. Andrews in the amounts recommended ahead.

A nominal sanction should also be imposed upon Plaintiff David Yurus. Of the amount recommended to be awarded against Steven Andrews, Plaintiff David Yurus should be jointly and several liable for a nominal amount of $1,000 as to each Defendant. The $1,000 sanctions awards should be imposed in addition to the $60,000 judgments for § 1988 fees and costs recommended above.

**T. Rowe Price**

T. Rowe Price seeks a Rule 11 sanction of $27,487.15 as fees and $6,626.69 as costs and expenses. Doc. 1066, ¶ 60. T. Rowe Price now seeks a judgment against Steven R. Andrews, The Law Offices of Steven R. Andrews, P.A., and Andrews Moye, L.L.C. Doc. 1066, p. 17. T. Rowe Price did ask for judgment against the professional association of Andrews Moye, L.L.C. in the motion to renew the Rule 11 motion, but did not mention The Law Offices of Steven R. Andrews, P.A. Doc. 937, p. 25. The report and recommendation and the district judge's order adopting that report and recommendation addressed only the claim of Mr. Andrews's personal liability.

Andrews Moye, L.L.C., did not come into existence until July 29, 2004. Doc. 1075, p. 5, n. 3. Plaintiff's motion for summary judgment was signed by Steven R. Andrews for Andrews & Walker, P.A., not The Law Offices of Steven R. Andrews, P.A. Doc. 737. Thus, the only liability at issue here is the personal liability of Steven R. Andrews.

Andrews objects to certain items in this claim. Doc. 1075, pp. 6-9. The items will be reviewed in the sequence presented.

Plaintiff's motion for summary judgment was filed on December 1, 2003. Doc. 737. At issue is the expense incurred shortly thereafter in responding to this motion.

T. Rowe Price explains that the time for April Boyer on December 7, 2003, is not part of the claim. Thus, this is not an issue.

Andrews objects to the time claimed for Daniel Casey on December 10, 2003. Casey claimed 1.90 hours to review the "Dobson deposition and legal research regarding motion for summary judgment issues regarding probable cause." Doc. 1066, exhibit E., p. 7.[10] This objection is not reasonable. Plaintiff cited the Dobson report as support for his claim that the Capitol Police lacked probable cause for his arrest. Doc. 738, ¶ 23. He also cited the Dobson report for the proposition that Kandace Hicks-Winters accepted cash gifts and gratuities from Providers and failed to disclose them in violation of state policy. *Id.*, ¶ 81. The Dobson deposition was relevant to a response to these portions of the motion for summary judgment.

Andrews next objects to the hours devoted to defense of this motion by Daniel Casey, a partner in the firm and the senior lawyer, on December 12 and 13, 2003.[11] His claim for work on those days is for 13.10 hours for drafting and editing the response. Doc. 1066, exhibit E, p. 9. Andrews points out that Boyer claimed 70.2 hours in the preparation of the response, and associates and a law clerk claimed another 45.80 hours. Doc. 1075, p. 7. It is argued that Boyer was also a partner, and that having two partners work on this response was duplicative.

T. Rowe Price has shown that Boyer was not a partner when she worked on the response to Plaintiff's motion for summary judgment, but was a 7th year associate.

---

[10] This is the page shown for this exhibit on the electronic docket. It is not a page number on the document itself.

[11] The objection to the description of work concerning "oath of receiver" is well-taken, but this appears to have been a typographical error in the invoice.

Doc. 1078, p. 13. April Boyer was first admitted to the bar in Pennsylvania in 1996. Doc. 1066, ¶¶ 3-4. It was not unreasonable for the senior attorney to spend 13.10 hours editing and revising the response where others spent approximately 115 hours on the response.

The 28.5 hours claimed by E. Ynigo, second only to the 70.20 hours claimed by April Boyer, is not facially unreasonable. The time records to support this claim identify the response to the motion for summary judgment as the subject of this work. That is adequate for this claim.

Andrews objects to research by attorney Simonitsch (4.40 hours) on the issue of evidence (hearsay and other forms of evidence) improper for consideration on summary judgment. Plaintiff argues that he did not raise a hearsay issue in his motion for summary judgment. Doc. 1075, p. 8. Plaintiff did, however, file over 600 pages of documents in support of his statement of facts as to which he contended there was no genuine dispute. Doc. 738. It was reasonable for T. Rowe Price to have needed some research as to proper Rule 56(e) evidence, and 4.40 hours is not unreasonable.

The final objection is that the claim for costs and expenses $6,626.69 is not supported. Doc. 1075, p. 9. T. Rowe Price argues that it is supported, citing the January, 2004, invoice in documents 837, 1066 and exhibit C, and documents 950 and 1066, ¶¶ 47-48. I have reviewed these documents and find nothing that links expenses related to defense of Plaintiff's motion for summary judgment and the claim for $6,626.69. The invoice of January, 2004, billed costs of $7,270.60 to T. Rowe Price. Doc. 1066, exhibit C. Since the billing related to December, 2003, it looks like those costs were all of the costs attributable to defense of this suit in December, 2003, with

the exception of $460.50 for a deposition on October 2, 2003. Since there is no credible correlation of any of these expenses to work caused by Plaintiff's motion for partial summary judgment, no costs should be awarded.

In summary, therefore, the court should enter judgment against Steven Andrews in the amount of $27,487.15 in favor of T. Rowe Price as a sanction pursuant to FED. R. CIV. P. 11. Of this amount, David Yurus should be jointly and severally liable for $1,000.

**BenefitsCorp**

BenefitsCorp seeks Rule 11 sanctions in the amount of $23,924.40. Doc. 1064, ¶ 15.

Andrews first argues that the number of attorney hours spent in responding to Plaintiff's motion for summary judgment is excessive. The number of hours is similar to that claimed by T. Rowe Price. The specific objections to the number of hours claimed by T. Rowe Price have been found to be unpersuasive. Therefore, this general objection is insufficient.

Andrews specifically objects to alleged duplication of time spent by Irma T. Solares (ITS) and Roger Cruz (RC) on December 10 and 11, 2003, when both were working on the response to Plaintiff's statement of facts. As noted above, Plaintiff's statement of facts was supported by over 600 pages of documents. It was not unreasonable to have two attorneys checking those documents and preparing the response to Plaintiff's statement of facts.

As no other objections were made, it is recommended that the court find the claim of BenefitsCorp to be reasonable. The court should enter judgment against Steven Andrews in the amount of $23,924.40 in favor of BenefitsCorp as a sanction

pursuant to FED. R. CIV. P. 11.  Of this amount, David Yurus should be jointly and severally liable for $1,000.

Accordingly, it is **RECOMMENDED** that:

1.  The court direct the Clerk to enter judgment in favor of T. Rowe Price and against David Yurus in the amount of $19,833.86 as attorney's fees pursuant to 42 U.S.C. § 1988.

2.  The court direct the Clerk to enter judgment in favor of T. Rowe Price and against Samantha Yurus in the amount of $2,677.17 as attorney's fees pursuant to 42 U.S.C. § 1988.

3.  The court direct the Clerk to enter judgment in favor of BenefitsCorp against David Yurus in the amount of $60,000.00 as attorney's fees pursuant to 42 U.S.C. § 1988.

4.  The court direct the Clerk to enter judgment in favor of T. Rowe Price against Steven R. Andrews in the amount of $27,487.15, and of this amount, against David Yurus, jointly and severally with Steven R. Andrews, in the amount of $1,000.00, as sanctions pursuant to FED. R. CIV. P. 11.

5.  The court direct the Clerk to enter judgment in favor of BenefitsCorp against Steven R. Andrews in the amount of $23,924.40, and of this amount, against David

Yurus, jointly and severally with Steven R. Andrews, in the amount of $1,000.00, as sanctions pursuant to FED. R. CIV. P. 11.

**IN CHAMBERS** at Tallahassee, Florida, on January 24, 2006.

> s/   William C. Sherrill, Jr.
> **WILLIAM C. SHERRILL, JR.**
> **UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**